UNITED STATES *v.* TIFFANY & Co. (No. 2041).[1]

1. EVIDENCE—CONSULAR CERTIFICATE OF DEPRECIATED CURRENCY—R. S. 2903—
   PARAGRAPH 692, CONSULAR REGULATIONS 1896, AMENDED 1916—ARTICLES 205
   AND 621, CUSTOMS REGULATIONS 1915.

   The consular certificate as to depreciated currency provided for by paragraph 692, Consular Regulations 1896, amended 1916, and R. S. 2903, and Articles 205 and 621, Customs Regulations 1915, are conclusive as to the extent of the depreciation but not as to whether the goods were purchased with such depreciated currency or as to whether they were purchased at the price named in the invoice or certificate.

2. ADDITIONAL DUTY FOR UNDERVALUATION—"MANIFEST CLERICAL ERROR"—PARA-
   GRAPH I, SECTION III, TARIFF ACT OF 1913.

   The invoice of goods imported from Italy stated the value as 6,488 francs. The back of the invoice bore the indorsement "Amount of invoice, lire 6,488." The value of the gold franc and the gold lira was the same, but the paper lira was depreciated. The consular certificate, erroneously assuming that the lira intended was the paper lira, stated the percentage of depreciation and the value of the merchandise accordingly. Importer entered the merchandise at such depreciated value. This was not "manifest clerical error," under Paragraph I, Section III, tariff act of 1913, and the additional duty provided for by the paragraph for undervaluation was justly imposed.

United States Court of Customs Appeals, December 21, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8332 (T. D. 38369).

[Reversed.]

*Bert Hanson*, Assistant Attorney General, for the United States.
*Sharretts, Coe & Hillis* for appellees.

[Oral argument Nov. 5-6, 1920, by Mr. Hanson and Mr. Sharretts.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consisted of bronze statuary which was manufactured by Chiruazzi & De Angelis, of Naples, Italy, and

---

[1] T. D. 38576 (38 Treas. Dec., 841).

was imported from that port on August 12, 1917, by Tiffany & Co. of New York. The goods had been purchased by the importers from the exporters at the agreed price of 6,488 French francs, notwithstanding the fact that they came from Italy. The circumstances which caused the parties to fix the price of the articles in French instead of Italian currency will be explained hereafter in this decision.

At the time of exportation an invoice was made out by the exporters at Naples showing the total price of the merchandise to be 6,488 francs, and this was certified in ordinary form by the United States vice consul at that port. But at this point a palpable error crept into the transaction, for while on the face of the invoice the total price was correctly stated to be 6,488 *francs*, on the back of the document appeared the indorsement, "Amount of invoice, *lire* 6,488." And thereupon the vice consul, probably misled by the erroneous indorsement, attached to the invoice a manifestly incorrect consular certificate to the effect that the invoice was made out in depreciated Italian currency which possessed a value of only 68.50 per cent of the standard coin currency of Italy, and that the value in such standard coin currency actually paid for the merchandise was but 4,444 lire.

This certificate was issued under the supposed authority of paragraph 692, Consular Regulations, 1896, amended 1916, whereby it is provided that "when the price or value of merchandise obtained by purchase, * * * *is expressed in the invoice in depreciated currency*, a currency certificate (Form 144) must be attached to the invoice showing the percentage of depreciation as compared with the corresponding standard coin currency, and the value in such standard coin currency of the total amount of the depreciated currency stated in the invoice. * * * (T. D. 36722.)   (Italics ours.)

The following is a copy of the certificate in question:

I, the undersigned vice consul of the United States of America at Naples, Italy, do hereby certify that the true value of the currency of the Kingdom of Italy, in which currency the annexed invoice of merchandise is made out, is 68.50 per cent, as compared with the corresponding standard coin currency, and that the value in such standard coin currency of the total amount of the currency actually paid for the merchandise is lire 4,444.

It may be noted at this point that at the time of this transaction the standard Italian gold lira and the standard French franc were of equal value, each being worth 19.3 cents in United States money; but that the paper lira which was then in common circulation in Italy was depreciated in comparison with the gold lira and correspondingly with United States currency, as stated in the consular certificate. There is no suggestion, however, in the record that the current French francs then in common circulation were depreciated as compared either with standard gold francs or gold lire, or in

comparison with the currency of the United States. Manifestly, therefore, the foregoing certificate should not have been issued, since the price of the merchandise was not expressed in depreciated currency in the invoice.

Accordingly when the importers came to enter the importation at New York they had before them the foregoing conflicting statements upon the invoice concerning the value of the merchandise, viz, the correct statement contained in the invoice itself that its amount was 6,488 francs (which at 19.3 cents per franc would be $1,252 in United States money), and on the other hand the incorrect statement contained in the consular certificate that the amount was 6;488 depreciated lire equal to only 4,444 gold lire (which at 19.3 cents per gold lira would be $858 in United States money). For the purposes of the entry the importers adopted the lesser and erroneous valuation. Accordingly in the entry they described the merchandise as "eight cases bronze statuary, lire 6,488 @ 68.50 % 4,444.28 @ 0.193 $858." The merchandise was concededly dutiable at 20 per cent ad valorem, and by means of this entry the importers unmistakably claimed an assessment at that rate upon a valuation of only $858, instead of $1,252, which was the actual value of the importation.

When the entry came to the local appraiser that officer reported upon it in the following terms: "All items appraised at per se units in French francs." According to this appraisement the appraiser simply adopted and approved of the valuation of 6,488 francs as stated in the invoice, thus correcting the error into which the importers had been led by the consular certificate. In effect, therefore, the merchandise which the importers had entered at a valuation of 4,444 gold lire, or $858, was appraised by the appraiser at the advanced valuation of 6,488 francs, or $1,252. The importers thereupon appealed to reappraisement.

At the hearing before the single general appraiser sitting in reappraisement the importers in writing conceded that the price of the merchandise was 6,488 francs, and that the entry stating the price to be 6,488 depreciated lire was erroneous. They therefore requested that the general appraiser appraise the importation at 6,488 francs; and in accordance with this request the single general appraiser appraised the merchandise in that amount. But the importers nevertheless appealed to a re-reappraisement.

At the hearing before the board of three general appraisers, sitting in re-reappraisement, the importers appeared by counsel and again conceded that the entry in depreciated lire was erroneous, admitting that the price of the goods was 6,488 francs, equal to 6,488 gold lire, and requesting that the board appraise the merchandise at 6,488 gold lire. In accordance with this request of the importers the board appraised the merchandise at 6,488 gold lire, which, as already

explained, equaled 6,488 francs, or $1,252. The reappraisement, therefore, agreed in substance with that of the single general appraiser, although differing in form. In both reappraisements alike the advanced value found by the local appraiser was followed or affirmed.

Thereupon the collector liquidated the entry upon the basis of the above reappraisement, and accordingly assessed the conceded ad valorem rate of duty upon the advanced valuation aforesaid, and also assessed additional duties under paragraph I, Section III, tariff act of 1913.

The importers then applied to the Secretary of the Treasury for relief from the additional duties thus assessed against them, but this application was denied in a letter of the department which reads in part as follows:

The importers claim that there was no advance in value, as they had carried the full amount of the invoice value in lire into their entry. The department, however, does not concur in this conclusion. It clearly appears, while the total invoice value was stated in the entry, that the importers intended to enter and did enter in depreciated currency, the total value in gold lire being 4,444 lire, while the appraised value in gold lire was 6,488 lire. There is no manifest clerical error apparent in the papers submitted, and the application must therefore be denied.

The importers thereupon filed a protest against the assessment, claiming among other things that the appraised value of the merchandise in question did not exceed the value declared in the entry, and that duty had been assessed upon an illegal valuation. The protest was sustained by the Board of General Appraisers, and an order was issued by the board to the collector directing him "to reliquidate on the number of lire mentioned in the entry at the value certified to by the consul." According to this order the collector was required to assess duty upon a valuation of 6,488 depreciated lire, equal to 4,444 gold lire, or $858. Such an assessment would, of course, reduce the amount of the ad valorem duty already assessed upon the merchandise, and would entirely rescind the assessment of additional duty thereon. The Government appeals from this decision.

We are unable to agree with the decision of the board, for upon the conceded facts in the case it appears to us that the importers understated the value of the merchandise in the entry, and that the appraised value of the merchandise exceeded the entered value thereof. And according to our view the collector's assessment of duty and of additional duty was correct.

In the first place, it is conceded that the actual price of the merchandise was 6,488 francs. Nevertheless the importers entered it at 6,488 depreciated lire. This was a simple error of fact, for depreciated lire had not entered into the purchase of the merchandise at

all, and the amount thus named was neither the invoice price nor the actual value of the goods. The error therefore was the same in principle as if goods purchased at the price of a hundred pounds sterling should be entered at the price of a hundred francs. The present entry simply understated the value of the merchandise, since, as already mentioned, 6,488 francs were equal to $1,252, whereas 6,488 depreciated lire were equal to only $858.

It should be noted that the undervaluation in question was not simply a mistake in the conversion of one kind of currency into another. Such a mistake of calculation might be excused under article 624, Customs Regulations, 1915, provided, however, that the correct foreign market value were stated in the invoice and entry. But in this case the importers were correct when they converted 6,488 depreciated lire into 4,444 gold lire and these into $858. The calculation was not faulty, but the value upon which it was based was not correctly stated. The discrepancy, therefore, was not one of currency, but of actual purchase price.

It may be noted, indeed, that there is no controversy in this case in relation to the value of any of the several denominations of currency herein mentioned, either as compared with one another or with currency of the United States. The parties agree that at the time of the transaction the French gold franc and the Italian gold lira were equal in value, each being worth 19.3 cents in United States currency (under sec. 25, tariff act of 1894, and the proclamation of the Secretary of the Treasury thereunder, July 1, 1917, T. D. 37252); also that the paper lira then in common circulation in Italy was depreciated as compared with the standard gold lira, and that if merchandise were purchased in such depreciated currency a consular certificate of depreciation should be attached to the invoice thereof (Rev. St., 2903; Customs Regulations, 1915, arts. 205 and 621); and that the present entry correctly converted depreciated lire into gold lire, and these into United States currency, according to the foregoing assumptions, so far as the mere calculation was concerned. It must accordingly be conceded that if the present merchandise in fact had been purchased for 6,488 depreciated lire, as stated in the entry, the consular certificate attached to the invoice would have been conclusive as to the extent of the depreciation and that the collector should have reduced the values in the invoice in accordance with the certificate. In which case the importers' entry, following the consular certificate as it did, would be correct, and it would have been the duty of the collector to liquidate the entry accordingly. (See Kohn, Weil & Co. case and citations, G. A. 7576; T. D. 35122.)

But this does not imply, as the board seems to hold, that the local appraiser by reason of these provisions would be foreclosed from

ascertaining and deciding as he did in this case that the merchandise in fact had not been purchased or paid for in the alleged depreciated lire, which fact indeed appeared as aforesaid upon the invoice itself; and therefore that the price of the merchandise was not correctly stated in the entry. Nor was the local appraiser foreclosed by the currency certificate from advancing the entered value of the merchandise, as he did in this case, in order to make it conform to its actual dutiable value as in other cases. (Par. K, Sec. III, tariff act, 1913.) Otherwise in such a case as this the functions of the appraiser would be denied to that officer by force of such a currency certificate and cast upon the United States consul who issued the certificate. There is no reason to believe that so radical an exception to the well-established rules was within the legislative intention. The cases cited by the board—Cramer v. Arthur (102 U. S., 612); Hadden v. Merritt (115 U. S., 25); and United States v. Klingenberg (153 U. S., 93)—while sustaining the view that such consular certificates as to depreciated currency are conclusive as to the extent of the depreciation, do not hold that they are also conclusive of the fact that the goods were actually purchased with such depreciated currency, or that they were purchased at the price named in the invoice or certificate.

The importers furthermore contend that the several appraisements made in this case were illegal, because two of them were made out in French francs and one in Italian gold lire, whereas, according to the importers' claim, such importations must necessarily be appraised in the current money of the country of exportation, since actual market value is defined by statute to be the price at which such merchandise is freely offered for sale to all purchasers and which the manufacturer would have received and was willing to receive for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities in the country of exportation. (Par. D, Sec. III, tariff act, 1913.) It is contended by the importers that these descriptions under the circumstances could apply only to the depreciated paper lire then in current circulation in Italy, and therefore that the merchandise should have been appraised in depreciated lire by the appraiser, the single general appraiser, and the reappraising board.

Upon this subject, however, the following extract from a report of a special commissioner, copied into the record, is important:

The appraiser in his letter to the consul desires to be informed as to—

1. What currency was in general use in Naples in domestic commerce—i. e., whether lire or francs?

Answer. Lire.

2. What currency was in general use there in domestic dealings at wholesale in bronzes of the firm mentioned and comparable merchandise?

Answer. This firm does not generally transact any wholesale domestic business in bronzes. Wholesale sales made in France and European countries have always been and are in francs as per catalogue.

3. Why are transactions in such bronzes for export to the United States made in francs?

Answer. Because francs is the actual currency in which such transactions are made.

Mr. Chiruazzi stated that the actual amount to be paid for this shipment is francs 6,488, as per consular invoice, notwithstanding certificate of depreciated currency. attached thereto, which states that the currency of the consular invoice is 68.50 per cent, as compared with the corresponding standard-coin currency. Mr. Chiruazzi further stated that an error was made in attaching this certificate of depreciated currency to the consular invoice, as the actual currency received on all sales made to Tiffany & Co. has always been francs, not depreciated lire.

According to the foregoing report, which is specifically corroborated by the statements in the record made on behalf of the importers, it appears that the present merchandise when sold in Italy "in the ordinary course of trade in the usual wholesale quantities" was sold and paid for in French francs (equal to Italian gold lire), and not in depreciated Italian lire. That course was concededly followed in the present instance. This fact compelled the exporters to make out the consular invoice, as they did, in francs instead of lire. (Par. C, Sec. III, tariff act 1913; Customs Regulations, 1915, art. 204.) Upon the record, therefore, we hold that it was proper under the circumstances for the local appraiser and the single general appraiser to appraise the merchandise in francs, and not improper for the reappraising board to appraise it in gold lire, which were the equivalent of francs.

In considering the action of these officers the applications made by the importers to the single general appraiser and to the reappraising board requesting them to make the appraisements which they now complain of should not be overlooked. For while the consent of parties can not endow a board with jurisdiction which is denied to it by law, yet such consent may have the effect in given cases of waiving irregularities if any occur in the exercise of conceded jurisdiction.

It is needless to say that this opinion deals with the regulations which were in force at the time of the present importation; some of these, however, have since been changed by the department.

It is therefore our view that the board erred in the decision entered by it, and the same is *reversed*.