CABLAT v. UNITED STATES (No. 2140).[1]

1. EVIDENCE, RELEVANCY—CONSULAR CERTIFICATE OF DEPRECIATED CURRENCY.
   The consular certificate of depreciated currency has no bearing where the invoice stated the value in United States dollars and in standard French coin francs.—United States v. Tiffany & Co. (10 Ct. Cust. Appls. 247; T. D. 38576).

2. ERROR WITHOUT INJURY.
   After decision on appeal to reappraisement by a general appraiser became final, it was the collector's duty to liquidate upon the basis of this appraisement. Where, however, he liquidated on the basis of the value stated in the invoice and this value was smaller than the appraised value, his error worked no injury to the importer.

United States Court of Customs Appeals, May 9, 1922.

APPEAL from Board of United States General Appraisers, G. A. 8462 (T. D. 38848).

[Affirmed.]

*Barnes, Chilvers & Halstead* for appellant.

*William W. Hoppin,* Assistant Attorney General (*John A. Kemp* and *Harry M. Farrell,* special attorneys, of counsel), for the United States.

[Oral argument February 17, 1922, by Mr. Halstead and Mr. Farrell.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

In this case the appellant claims that the dutiable value of the merchandise was 160,436.90 francs in depreciated French currency, then quoted at about 50 per cent of the normal exchange value of standard coin francs in terms of United States money; that this condition was regularly established before liquidation by means of a consular currency certificate duly filed with the collector, as well as by an official appraisement of the merchandise upon an appeal to reappraisement; but that the collector nevertheless treated the aforesaid valuation of 160,436.90 francs as if that sum signified undepreciated or standard coin francs, and accordingly assessed ad valorem duty thereon without allowance for the actual depreciation aforesaid;

---

[1] T. D. 39127.

thereby in effect exacting double duty upon the importation. This complaint presents the issue now upon appeal.

In coming to consider this question it seems well to refer first to certain provisions of the statutes and regulations which are relevant thereto.

It is provided by law that all invoices of imported merchandise shall be made out in the currency of the place or country from whence the importation shall be made, or, if purchased, or agreed to be purchased, in the currency actually paid, agreed upon, or to be paid therefor. (Par. C, Sec. III, tariff act of 1913.)

It is the duty of the Secretary of the Treasury on the 1st day of January, April, July, and October in each year, to issue a proclamation wherein the values of the standard coins of the various foreign nations of the world shall be expressed in the money of account of the United States. And during the quarter succeeding such a proclamation the values so proclaimed shall be followed in estimating the value of all foreign merchandise exported to the United States. (Sec. 25, tariff act of Aug. 27, 1894.)

In the discharge of this duty, on January 1, 1920, the Secretary of the Treasury proclaimed the value of the standard coin franc of France for the period now in question to be 19.3 cents in terms of United States money. (T. D. 38321.)

It is provided furthermore that the President may cause to be established fit and proper regulations for estimating the duties on merchandise imported into the United States, in respect to which the original cost shall be exhibited in depreciated currency, issued and circulated under authority of any foreign Government. (Sec. 2903, Rev. St.)

In the exercise of the foregoing authority a customs regulation was duly published that if the currency specified in an invoice is then actually exchanged for United States currency in the country of exportation at a rate which is lower than the value proclaimed by the Secretary of the Treasury, the United States consul at the port of exportation shall attach to the invoice a certificate showing the rate at which such currency is exchanged for United States money in the principal markets of the country at the time; and the currency of the invoice shall be reduced by the collector of customs to United States currency in accordance with such certificate. In the absence of a currency certificate as aforesaid, the collector shall reduce the foreign currency named in the invoice to United States money in accordance with the value of foreign coins of similar denomination as proclaimed by the Secretary of the Treasury for the quarter in question. (T. D. 38187.)

The importation in the instant case consisted of 500 cases of ferrochrome, purchased in France by the International High Speed

Steel Co., and entered at the port of New York on February 14, 1920. The invoice of the merchandise is so important in the consideration of this case that its contents must be set out at this point in detail.

The invoice describes the merchandise as 50,000 kilograms net of ferrochrome, with a content of 62.70 per cent pure chrome; the latter is also computed in pounds, to wit, 69,115 pounds. The price of pure chrome is then stated in terms of United States money at 44 cents per pound, and the total value stated at $30,410.60. The invoice then reduces the latter sum to francs, using a divisor of 19.3 cents, and stating the result to be 157,567.90 francs. It should be noted that this computation converts the $30,410.60 aforesaid into standard coin francs and not into depreciated francs, since the divisor thus employed, to wit, 19.3 cents, was at that time the value in United States money of a standard coin franc as proclaimed by the Secretary of the Treasury for the quarter in question. Accordingly the invoice, as thus described, states the total value of the chrome content of the merchandise to be $30,410.60 in United States currency, and correspondingly to be 157,567.90 francs in the standard coin currency of France. But the invoice proceeds further. It next states the price of the ferrochrome as shipped (as distinguished from the chrome content only) to be 3,151.36 francs per 1,000 kilograms, and thereby again finds a total value of 157,567.90 francs for the entire importation. It need hardly be said that this total again signifies standard coin francs of French currency, and that the terms of the invoice directly and unmistakably preclude the interpretation that the francs therein named were depreciated in value as compared with standard coin francs, or with United States currency at the normal rate of exchange established by the Secretary of the Treasury.

It may here be recapitulated that the merchandise was obtained in France by means of purchase; that accordingly it became the duty of the shipper to make out the invoice in the currency actually paid or agreed to be paid therefor; that in fact the invoice when made out stated the total price in two several currencies, to wit, $30,410.60 in United States money and 157,567.90 francs in French money, which two respective sums were stated to be equivalents; and that these sums were in fact equivalents, only however upon the assumption that the French francs aforesaid were standard coin francs.

The merchandise in question was entered for duty upon the foregoing invoice on February 14, 1920, but the price thereof as stated in the entry was virtually reduced to about one-half that stated in the invoice. For whereas the entry, as well as the invoice, stated the price at 157,567.90, increased however in the entry by certain unimportant additions, it was particularly specified in the entry that these were depreciated francs, which were valued relatively at 9.56 francs for $1 of United States currency. And it was

accordingly specified in the entry that the price when converted into United States currency was $16,782. It hardly need be recalled that the price in United States money named in the invoice was $30,410.60.

At this point we may again note the regulation above referred to, whereby, when an invoice is made out in a depreciated currency, a consular certificate may be procured in proof of the depreciation. At the date of the entry just described, the entrant produced no certificate of that character nor was such a certificate attached to the invoice, although the entry rested upon a claim of depreciated currency. But the entrant then engaged with the collector to secure such a certificate from the proper consul, and to file the same at the customs before liquidation. A bond to that effect was executed on behalf of the entrant and delivered to the collector. And afterwards, before liquidation, a certificate signed by the proper consul was delivered to the collector and was accepted by him as a compliance with the bond just mentioned. The certificate reads as follows:

AMERICAN CONSULAR SERVICE,
*Lyons, France, December 30, 1920.*

I, C. Carrigan, consul of the United States of America, do hereby certify that the value (paper silver) of the currency of France, in which currency invoice of merchandise No. 3132 was made out, was exchanged for United States currency in the principal markets of France on the date of the certificate of said invoice on the 17th day of November, 1919, at the rate of francs 9.47½ (invoice currency) for one dollar (United States currency).

C. CARRIGAN, *American Consul.*

We do not overlook the fact that the regulation providing for the issuance of such a consular currency certificate requires that the consul shall attach the same to the invoice in question. In the present case the certificate as just mentioned was not attached to the invoice, but was issued at a later date. It was stated to the court in argument that the delay was caused by administrative difficulties and that the Government would make no objection to the certificate on that account. This decision therefore takes no further notice of the fact.

The invoice and the entry aforesaid came to the local appraiser for action, and that officer appraised the merchandise in francs at a value of 7 francs per kilogram, which, of course, would equal 7,000 francs per 1,000 kilograms. It will be remembered that in the invoice the price of 3,151.36 per 1,000 kilograms is given; accordingly the value per kilogram in francs as found by the local appraiser was more than double that stated in francs in the invoice. No explanation of this radical difference appears in the record but it may readily be believed that the local appraiser undertook to appraise the merchandise in depreciated francs, and accordingly more than doubled the nominal price as compared with the invoice, not as an advance

over the actual invoice price, but as a means of bringing the value thus appraised in depreciated francs up to the price named in the invoice in standard coin francs. The result of such a course would simply be to affirm the invoice valuation by increasing the nominal total of francs sufficient to offset the depreciation thereof as incorporated in the appraisement. This, however, is of passing interest only, for the appellant thereupon appealed for a reappraisement of the merchandise. This was had in due course by a general appraiser, who likewise reported a valuation in francs. A value of 3,150 francs per 1,000 kilograms, with 55 francs additional per kilogram for each unit in excess of 60 per cent chromium content, was reported. It is conceded that the true chrome content of the ferrochrome was 61.15 per cent, and the foregoing appraisement, when taken upon that basis, totals 160,562.50 francs, as against 157,567.90 francs stated in the invoice. No appeal was taken from this appraisement; it therefore finally established the value in francs of the merchandise.

The collector, acting upon the foregoing record, held that the invoice aforesaid was made out actually in money of the United States, with a stated price for the merchandise of $30,410.60, and that in consequence of that fact the consular currency certificate aforesaid was inapplicable and of no force or effect. The importation was thereupon assessed with duty at a conceded ad valorem rate upon a dutiable valuation of $30,410.60, being an amount equal to that stated in the invoice aforesaid.

The appellant protested against the assessment, upon the claim that the valuation upon which duty had been assessed was in excess of the entered value of the merchandise and also in excess of its final dutiable value as found on reappraisement and returned by the general appraiser. The protestant claimed that duty should have been assessed upon the entered value as set forth in the entry, reduced to United States money at the rate of exchange set forth in the consular certificate of currency value, or upon the value returned by the general appraiser converted into United States money at the rate of exchange shown in the currency certificate aforesaid.

As has been indicated, the board overruled the protest, and this appeal was taken from its decision.

Upon a consideration of the foregoing record we agree with the collector that the invoice unmistakably establishes the fact that the merchandise in question was purchased in France at and for the price of $30,410.60 United States money, or for the equivalent thereof in the standard coin francs of France at the rate of exchange proclaimed by the Secretary of the Treasury pursuant to law. Therefore it can not be said that "the currency specified in the invoice" was at the time depreciated, or was "exchanged for United States

currency in the country of exportation at a rate which is lower than the value proclaimed by the Secretary." And a consular currency certificate accordingly could not lawfully issue, or if actually issued could have no effect, since its issuance was conditioned upon the existence of such a depreciation in the currency of the invoice.

It is true that such a certificate if lawfully issued is conclusive authority regarding the extent of the depreciation which it attests.— Cramer *v.* Arthur (102 U. S. 612). But on the other hand the issuance thereof is not conclusive evidence to the effect that the merchandise in question was in fact purchased with such depreciated currency nor that it was purchased at the price named in the invoice or certificate.—United States *v.* Tiffany & Co. (10 Ct. Cust. Appls. 247, 251; T. D. 38576). And in the instant case no question upon that subject can possibly arise, since the invoice specifically negatives such an assumption and unmistakably declares that the price of the merchandise as therein set out was an undepreciated price in United States currency, or its equivalent in standard French francs at the rate of exchange proclaimed by the Secretary of the Treasury.

Consequently the currency certificate in question possessed no force or effect in the case, and it was proper for the collector to assess duty without reference thereto. But since the merchandise had been appraised by a general appraiser upon an appeal to reappraisement, and no appeal had been taken from his decision, it seems clear that the assessment should have been upon the dutiable valuation thus found. That valuation, as stated above, was expressed in francs, and for the purpose of assessment these should have been converted into United States currency at the rate of exchange proclaimed for the time by the Secretary of the Treasury, namely, 19.3 cents per franc. Instead of this the collector apparently ignored the appraisement and assessed duty upon the valuation in United States currency first set out in the invoice. This irregularity, however, did not prejudice the rights of the importer, since, as above appears, the value in francs found by the appraiser was greater than that stated in francs in the invoice and correspondingly greater than the equivalent of that sum in United States money. It thus appears that the adoption of the price in United States currency first set out in the invoice, to wit, $30,410.90, as the dutiable valuation of the merchandise, resulted in the assessment of a less amount of duty than would have followed from the adoption of the appraisement in francs reported by the general appraiser when reduced to United States currency at the rate of 19.3 cents per franc.

Accordingly the decision of the board overruling the protest is *affirmed.*