(C. D. 1233)

D. N. & E. WALTER & CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 13, 1950)

*Lawrence, Tuttle & Harper* (*George R. Tuttle, Walter I. Carpeneti,* and *Charles J. Evans* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*William J. Vitale, Michael Stramiello, Jr.,* and *John J. Antus,* special attorneys), for the defendant.

Before CLINE, EKWALL, and OLIVER, Judges

EKWALL, Judge: The plaintiff herein imported a quantity of rugs from Tientsin, China, into the port of San Francisco. The rugs were exported from China on August 21, 1946. On the consular invoice the value of the rugs is stated in United States dollars, f. o. b. Tientsin. The amounts of the charges which were included in the prices are given in Chinese national currency, except for the item of consular fee, which is stated in United States dollars. The invoice also contains a statement as follows:

The price stated in this invoice is actual value of the merchandise. Rate of Exchange 2,060.

The appraiser checked the invoice and entered values as correct as indicated by the red-ink check mark under column headed "Appraised" on the "Summary of Examination and Appraisement sheet." On liquidation the collector converted the deductible charges at the rate of $0.000297, or on the basis of 3,367 Chinese national currency to one United States dollar. Plaintiff claims that the liquidation is erroneous in that the transaction was in Chinese currency; that the appraiser's approval of the invoice values was actually an appraisement in Chinese national currency; that the collector should have converted the total value expressed on the invoice ($77,362.46) into Chinese currency at the rate of 2,060 ($0.000485), from which the cost of the nondutiable charges should have been deducted; that reconversion should have been made into United States dollars at the rate of 3,367 Chinese national currency to one United States dollar ($0.000297); and that duty should have been based upon the value as thus determined. It is further claimed by the plaintiff that the statement appearing on the invoice "Rate of Exchange 2,060," means that the entire transaction was in Chinese national currency and that the approval of the entered value was actually an appraisement in Chinese national currency, the amount to be ascertained through conversion of the United States dollar value to Chinese national currency at the rate of 2,060. An amendment to the protest was sought in which plaintiff claims further that the liquidation is erroneous and illegal because the collector failed to convert the currency of appraisement, which he alleges was Chinese national currency, at the rate in effect on the date of exportation, or because a valid appraisement was not made, as required by section 14.2 (f), Customs Manual of 1943, and that the appraiser should have appraised in Chinese national currency. Further, it is contended that because the appraisement is invalid or void the matter should be remanded to a single judge for determination of the proper dutiable value, as required by section 501, as amended by the Customs Administrative Act of 1938.

As to plaintiff's claim that the purchase was in Chinese national currency, as evidenced by the statement on the invoice "Rate of Exchange 2,060," we find no merit in that claim. The entire invoice, as well as the entry, was made out in United States dollars. No mention of Chinese national currency is found except as to the charges. Plaintiff's claim that such or similar merchandise was usually bought and sold in China in Chinese national currency is not supported by the evidence. The manager of the import department of the plaintiff, who attended to all the buying abroad and had charge of the management of that department as well as selling, testified that he was thoroughly familiar with the purchase of this lot of merchandise; that the firm had been making such purchases from this supplier in China for some 16 years; that the purchase of this lot was arranged for by correspondence and cable. In this connection, he testified that it was impossible for the seller at the time of this transaction to ascertain the price at which it could sell the new production of this merchandise after the war, and that as the plaintiff was very anxious to revive the production of this prewar fabric, the seller was told to start production and determine at what price the goods would have to be sold and invoice them accordingly. This witness did not visit China after the war until September 1947. The date of exportation in the instant case is given on the entry as August 21, 1946. In view of that lapse of time, testimony on the part of this witness as to the currency in which the merchandise before us was bought and sold is entitled to little weight. As to the method of purchasing at the time these goods were exported and prior thereto, the witness stated:

The supplier would cable us our F. O. B. cost Tientsin after conversion into United States currency. To this we would add the duty, freight, and incidental landed costs.

He also stated that sometimes the supplier advised plaintiff as to the rate of conversion of the Chinese currency into United States dollars and at other times plaintiff was given merely the United States dollar value. The witness stated that the figures of $77,362.46, being the total value expressed on the last page of the invoice, were arrived at by converting Chinese national currency into United States dollars at the rate of 2,060 to 1. He stated that at the time of this exportation it was more important to his concern to revive production than to place an order at any definite price because the seller could not determine the price—the exchange, the raw material supply, and the cost thereof all being uncertain, as was also the maker's price—and it was understood that the seller was to find out what the cost would be in Chinese currency, which cost would be converted into United States dollars in submitting the invoice.

The customs broker who made entry of the goods testified that in doing so he converted the total amount of the charges, which were

expressed in Chinese national currency, into United States dollars at the rate of $0.000485 which was based on 2,060 Chinese dollars to one United States dollar.

The liquidator in the office of the collector of customs at San Francisco testified on behalf of the plaintiff that he converted the Chinese national currency (covering the charges) at the rate of $0.000297, which he stated would represent a ratio of one United States dollar to 3,367 Chinese national dollars.

At the hearing in New York the motion to amend the protest, decision on which had been reserved at the earlier hearing, was granted. Government counsel offered and there was received in evidence a certification of the Federal Reserve bank, which certifies a rate of $0.000297 for the Chinese national currency as of August 21, 1946, the date of exportation of the within merchandise. Counsel also directed the attention of the court to T. D. 51487, 81 Treas. Dec. 128, which shows that no value was estimated by the Director of the Mint for the Chinese yuan as of that date.

On the question of the legality of the appraiser's finding of value, we find that the merchandise was invoiced and entered in United States dollars. We are not here concerned with the correctness of the appraiser's finding of value, which is a matter over which the reappraisement side of the court has exclusive jurisdiction. So far as the record shows, because of the fact that production of this merchandise was being resumed after interruption due to the war, it was necessary for the manufacturer to ascertain the price at which the goods could be sold in order, presumably, to make a profit, and as the plaintiff was very anxious to revive production the seller was told to determine what the cost would be and then charge accordingly. The difficulty in ascertaining the cost prior to shipment apparently was due to the fluctuations in the currency. The goods were therefore invoiced and paid for in United States dollars. Under these circumstances, we find that the appraisement in United States dollars has not been shown to be invalid. See the case of *R. H. Macy & Co.* v. *United States*, 38 Treas. Dec. 693, T. D. 38527, G. A. 8386, where sardines imported from Norway were purchased and invoiced in United States currency and appraisement was made in kronen. The court, after quoting the language of the statute there involved (paragraph K, section III, Tariff Act of 1913), defining the duty of the appraisers, stated:

This language does not expressly or by necessary implication exclude the idea of a reappraisement in the money of the United States as used in the invoice, if that was also the money of contract and purchase.

The statutory language there involved does not differ materially for the purposes of the question here presented from the wording of section 500 of the Tariff Act of 1930 (19 U. S. C. § 1500).

As to plaintiff's claim that the appraiser failed to follow section 14.2 (*f*) of the Customs Manual of 1943, we find that claim to be without merit. That section provides:

Except as otherwise provided for in this section, the appraised value shall be expressed in that currency of the country of exportation in which merchandise such as or similar to that under appraisement is usually bought and sold in the ordinary course of trade in such country.

We find no substantial evidence that the currency in which such or similar merchandise is usually bought and sold in the ordinary course of trade in China is Chinese national currency.

We further find that the record does not support a finding that the merchandise before us was appraised in Chinese national currency. *United States* v. *Ferrari*, Circular No. 2489, relied on by the plaintiff is not in point. There, the merchandise was invoiced in a foreign currency and it was held that the fluctuations in the exchange did not affect the price paid to the manufacturers and that the question of exchange did not enter into the selling price. The court held that since the sale was in foreign currency the price in that currency should be converted into United States dollars at the arbitrary rate fixed by the manufacturers. That case arose on the reappraisement side of the court and the decision was based on evidence produced on the question of the value of the merchandise. Here, we have no such issue before us, but a question, not of the correctness of the value found by the appraiser, upon which liquidation was based, but whether such determination by the appraiser was valid under the statute. The only forum in which the statutory value of the instant merchandise can be determined would be in reappraisement. No appeal was taken from the appraiser's finding of value in United States dollars.

We further find that the liquidation has not been shown to be in contravention of the statute. Judgment will therefore be rendered in favor of the defendant.