(R.D. 11724)

HARUTA & CO., INC. v. UNITED STATES

Entry Nos. 999059, etc.

(Decided October 29, 1970)

*Siegel, Mandell & Davidson* (*Joseph S. Kaplan* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

LANDIS, Judge: This case covers thirteen appeals for reappraisement consolidated for trial to test the valuation of a miscellany of chinaware and earthenware household articles exported from Japan in January, February, March, April, May, June, and August of the year 1966.

The parties agree that export value, as defined in section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 19 U.S.C., section 1401a(b), is the proper basis for valuation. The appeals, of which I assume R66/16958 is representative, are limited to valuation of all articles which the appraiser chose to mark with the letter "F" on the entry invoices, "appraised at invoice unit value[s], net, packed plus prorated amount items marked A". The letter "A" brackets items designated on the invoice as inland freight, inland insurance, and shipping charges. Attached to the invoices is a document listing the names of the various manufacturers of the imported articles. The letter "F" is also marked alongside the names of the manufacturers of the articles the appraiser chose to mark "F".

Plaintiff claims that the inland charges prorated to the articles marked "F" are not part of the dutiable export value; that the invoice unit values represent the ex-factory prices and that such prices are the correct dutiable export values of the disputed articles.

Export value is defined in section 402, *supra*, as follows:

> (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

On trial, in open court, counsel on both sides stated that the sole issue in this case is whether the articles in dispute are freely sold or, in the absence of sales, offered for sale to all purchasers on an ex-factory basis. It would therefore appear on that limited issue, that the parties agree that the disputed appraisements are severable as to the so-called ex-factory invoice unit values and the inland charges. In the context of these severable appraisements, plaintiff thus relies on

the presumption of correctness attaching to the ex-factory invoice unit prices and controverts only the inland charges. *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914 (1967). Upon the issue thus joined, plaintiff had the burden to establish that the disputed articles were freely sold or, in the absence of sales, freely offered for sale to all purchasers, on an ex-factory basis. *United States* v. *Pan American Import Corp. et al.*, 57 CCPA 134, C.A.D. 993 (1970).

The official papers in each of the consolidated cases are in evidence. Affidavits from thirty-one manufacturers, each of which manufactured one or more of the appraised invoice articles lettered "F", and the testimony of Junji Miyakawa, president of Haruta & Company, Inc., plaintiff in this case, completes the evidence.

At the outset Mr. Miyakawa testified that he usually goes to Japan to buy merchandise. He places orders for the merchandise directly with the manufacturers and the merchandise is shipped through his company's purchasing agent in Japan. He identified, as one of his agents, Taiyo Shoko Kaisha, Ltd. whose name appears on the invoices covering the articles purchased from the various manufacturers in these consolidated appeals (see official papers in R66/16958).

Mr. Miyakawa's testimony that plaintiff purchased the disputed "F" articles at prices ex-factory is not, of course, probative of the more basic issue, namely, whether those articles were freely sold to all purchasers on an ex-factory basis. Whether the disputed articles were freely sold to all purchasers on an ex-factory basis is a question of fact. The affidavits, obviously run off the same form, have blank spaces filled in with the name of the affiant, the name of his company, the date the affiant became "charged with the responsibility for setting selling prices for our export merchandise and arranging and administering terms of sale", and the names by which the affiant's firm has been variously identified in commercial transactions. The affidavits, all subscribed and sworn to before an American consulate in the City of Nagoya, Japan, are dated the 22nd, 23rd, and 25th days of April 1969. They typically state as follows:

### AFFIDAVIT

1. I am * * * [position and name of affiant] of * * * [name of firm], manufacturer of various merchandise sold to Haruta & Co. Inc. of New York, New York, through Taiyo Shoko Kaisha, Ltd.

2. This affidavit is made to support the claim of Haruta & Co. Inc. that the merchandise purchased from our concern is purchased at a price which is freely offered to all wishing to buy for exportation to the United States on an ex-factory basis.

3. Our merchandise is freely offered on an ex-factory basis, and Haruta & Co. Inc. has always made its purchases on this basis. This means that all liability for movement of the goods from our factory is assumed by the purchaser. We are not responsible for delivery of the goods beyond our factory door, packed ready for shipment. The buyer must and does make all arrangements for picking up the goods at our factory and delivery to their ultimate destination. Usually the buyer pays us to perform this service at an extra charge.

4. I am fully familiar with all the facts set forth in this affidavit because it is a requirement of my professional position. I am and since * * * [date] have been charged with the responsibility for setting selling prices for our export merchandise and arranging and administering terms of sale.

5. I have reviewed the books and records of our firm, which books are prepared and maintained by me and under my direct supervision and control. All sales to Haruta & Co. Inc. as disclosed by our books, were under basis of ex-fact terms. At all times, covered by this affidavit our merchandise was freely available on the same basis to anyone wishing to buy in wholesale quantities for exportation to the U.S.A.

6. I have been advised that our firm has been variously identified on commercial invoices by the following names:

    \*    \*    \*    \*    \*    \*    \*     [list of names]
These several names do not represent different firms. They are all variations in transliteration or abbreviation or in translation of the name of the firm identified in the first Paragraph of this affidavit.

---

JAPAN
CITY OF NAGOYA
CONSULATE OF THE
UNITED STATES OF AMERICA      SS: [signature of affiant]

Subscribed and sworn to before me
on this * * * day of April, 1969.
      [Signed]
     Albert W. Noonan, Jr.
       American Consul

The general statements made in the above form of affidavit prepared so that the affiants need only to fill in blank spaces and sign the affidavit are not, in my opinion, entitled to much, if any, weight. There is no reference in the affidavits to the dates of sales, or to the merchandise that was sold, and no commercial invoices to corroborate that, on the dates of exportation, such or similar merchandise as that imported was freely offered or sold to all purchasers on an ex-factory basis. Statements, unsupported by evidence of actual offers or sales, are not sufficient to establish that the merchandise was freely sold or offered

for sale on an ex-factory basis. Moreover, under section 402(b), as amended, where there are actual sales, offers may not be considered. *W. J. Byrnes & Company* v. *United States*, 50 Cust. Ct. 406, 410, Reap. Dec. 10451 (1963).

I find as a matter of fact:

1. No substantial evidence that, at the times of exportation, merchandise such as or similar to the disputed appraised articles lettered "F" on the invoices in these consolidated appeals was freely sold or, in the absence of sales, offered for sale to all purchasers for export on an ex-factory basis.

2. That in consolidated appeal for reappraisement R66/27091 (as defendant points out), the merchandise, none of which is marked with the letter "F", was appraised on a non-separable *per se* unit basis, and that, as to such merchandise, plaintiff has failed to prove each and every element of statutory value as defined in section 402(b), *supra*. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593 (1955).

I conclude, as a matter of law, that the export values of the disputed articles marked "F" on the invoices of the entries in the consolidated appeals, are the appraised values.

Plaintiff having limited the consolidated appeals to entry invoice items "F", appeal for reappraisement R66/27091 is severed from the consolidated cases and dismissed.

Judgment will be entered accordingly.