**L. H. GRAVES**

v.

**UNITED STATES.**

**A.R.D. 242; Reappraisement 289888–A.**

United States Customs Court
Second Division, Appellate Term.
July 30, 1968.

Stein & Shostak, Los Angeles, Cal. (Marjorie M. Shostak, Theo. B. Audett, and S. Richard Shostak, Los Angeles, Cal., of counsel), for appellant.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Sheila N. Ziff and Dominick M. Minerva, New York City, trial attorneys), for appellee.

Before RICHARDSON and LANDIS, Judges, and OLIVER, Senior Judge.

LANDIS, Judge:

This controversy involves the valuation of an American Douglas C–47 aircraft, assembled in Costa Rica with foreign labor and so-called American made components and sold for export to the United States. The aircraft was exported in flight from Costa Rica on or about September 16, 1955, and was formally entered at Brownsville, Texas, on September 26, 1955, at plaintiff's valuation of $85,000.

The case is before us on application to review the decision and judgment below sustaining the appraisement of the aircraft (L. H. Graves v. United States, 56 Cust.Ct. 709, R.D. 11167) at the figure of $92,000, cost of production basis, under section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. The amount of $92,000 includes the value of American components, of which there were many, including an American-built fuselage in dispute here, returned by the appraiser at a total amount of $39,487.-42.

Those components are concededly free of duty, as American goods returned under paragraph 1615 of the Tariff Act of 1930, as amended, and the appraiser deducted such amount of $39,487.42 from the appraised value of $92,000 leaving a dutiable value of $52,512.58.

Appellant substantively alleges that the trial judge erred in holding, *inter alia*, that the proofs of record (1) failed to overcome the presumptively correct appraised values, (2) failed to establish the claimed $85,000 export value under section 402a(d) of the Tariff Act of 1930, as amended, supra, and (3) failed to establish the claimed $77,948.42 ($38,861.00 for the American-built fuselage and $39,087.42 for all other American made components) value of the nondutiable American made components used in assembling the aircraft.

Appellant additionally argues that if there is no export value for the aircraft, as previously contended, then $85,000 is the proper amount of cost of production value on that basis. Appellant did alternatively claim cost of production basis in its pretrial rule 15(d) statement. However, it limited its argument below to the claim that export value rather than cost of production value was the proper basis of appraisement. Appellant might well have argued the proper amount of cost of production value before the trial judge. It elected not to. As the case comes to us, the question of whether we should now entertain appellant's challenge to the amount of cost of production value found below, as distinguished from the cost of production basis of valuation, is a close one. An appellate court is not the place to raise new issues. United States v. Louis Victor et al., 20 Cust.Ct. 362, Reap.Dec. 7522 (review). And unassigned errors will not be entertained on review. Mutual Supply Co. v. United States, 28 Cust.Ct. 591, Reap.Dec. 8104 (review). However, as the trial judge did state, in his opinion decision, that the record failed to disclose "a cost of production [value] different from the cost of production [value] found by the appraiser which is presumptively correct," we will review that holding and we accept, as implicit in the grounds of appeal, an assignment that it was error to so hold.

The trial judge also found that there was no foreign value or United States value for the aircraft under section 402a(c) and (e), as amended, supra. No error having been raised, we do not review those findings.

Two principal questions are posed by this application for review. First, the value of the aircraft under section 402a as amended, supra; second, the value of the American made components, used to assemble the aircraft, under paragraph 1615. Overriding both questions is the statutory presumption that, as to each of those values, the amounts found by the appraiser, are correct, 28 U.S.C. section 2633.

We first take up the value of the aircraft in the context of the claimed and appraised bases of valuation, as defined in section 402a, which provides as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The record below consists of testimony adduced by both sides, appellant affidavits, and documents introduced by appellee. There is no need to discuss appellee's proofs unless appellant has proved a statutory export value and the amount thereof or, alternatively, a cost of production value different from the appraisement. For, short of this, "[h]owever erroneous the appraiser's action may have been in valuing the merchandise, it was incumbent upon appellant seeking to prove the correctness of a different statutory \* \* \* value to meet every material issue in the case, and hence *establish every element of that value in strict compliance with the dictates of section 402*[a] \* \* \* supra. Failing to sustain this burden of proof, the value found by the appraiser remains in full force and effect." Kobe Import Co. v. United States, 42 CCPA 194, 198, C.A.D. 593 [emphasis added]. We emphasize the latter since appellant, as is so frequently the case, stresses what is essentially negative so far as proofs are concerned, that the appraise-

ment is erroneous. For the reason, as we shall now demonstrate, that we find nothing in the record that factually accords with an export value or a statutory cost of production value, other than the appraised value, as defined in section 402a(d) and (f), supra, we must affirm the decision below.

■ Appellant contends that the testimony of Mr. William Steiner and the affidavit of Mr. Robert E. Anson (exhibit 1) prove "that the airplane at bar was freely offered for sale on the world market for airplanes, at $85,000, and that it was sold for that price" to the purchaser on whose account it was imported. A single sale, which, so far as the record shows, was the case here, might establish an export value provided it was made at a price offered to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States. United States v. Malhame & Co., 19 CCPA 164, T.D. 45276.

Mr. Steiner testified some 8 years after the purchase transaction The best he could do is relate what he personally recollected of the transaction. On the material issue of export value, he stated that he was an aircraft dealer; that he bought the aircraft for $85,000 and, in addition, paid somewhere around $6,500 import charges and delivery charges to have the aircraft ferried from Costa Rica to Long Beach, California. He admitted paying a total of $92,000 for the aircraft (trial record, at page 31), but attributed the difference between the $92,000 paid and the $85,000 purchase price to import charges. (R.31.)

Robert E. Anson's affidavit, on the issue of export value, recites that he was general manager of the company which assembled and sold the aircraft during the relevant export period; that while assembly was in progress, the aircraft was offered for sale worldwide; that the fair market value for standard C–47 Douglas Aircraft was approximately $85,000, the amount for which it was subsequently sold to Mr. Steiner; that $85,000 was all his company received and that any amount paid by Mr. Steiner in excess of $85,000 was not paid to his company but to a different company which arranged for delivery of the aircraft to Long Beach, California.

If we may paraphrase what our appeals court said in the *Malhame* case, supra, at pages 170, 171, nowhere in the testimony of either witness are we able to find any statement that the purchase price was, at the time of exportation of the aircraft from Costa Rica, the price which the seller or anyone else was freely offering such or similar merchandise to all purchasers in the principal markets of Costa Rica, in the ordinary course of trade for exportation to the United States. We appreciate that there are difficulties when an assembled airplane, sold in what comes down to an isolated transaction, has to be appraised. As our appeals court said apropos of the appraisement of a unique diamond:

> * * * It is not easy to apply the phrase, "or similar merchandise", for the reason that in the strict sense of the term, there may not be any other diamond in existence which is similar in shape to that involved, and the shape, it is fair to assume, affects the question of price per carat as do size and weight. Application of the phrase, "freely offered for sale," likewise presents difficulties as does the phrase, "in the ordinary course of trade."

Notwithstanding the difficulties, however, appraisement must be had, and it would seem that the only feasible plan is to rely upon persons expert in valuing precious stones to arrive at a valuation which meets the terms of the statute, as closely as is humanly possible. The expert in the first instance is the local appraiser who, by the provision of section 500(a) (1) of the Tariff Act of 1930, is required:

> To appraise the merchandise in the unit of quantity in which the

merchandise is usually bought and sold by ascertaining or estimating the value thereof *by all reasonable ways and means in his power*, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding. (Italics ours.)

The finding of value by the local appraiser is presumptively correct and the Tariff Act of 1930 specifically provides (section 501) that "the burden shall rest upon the party who challenges its correctness to prove otherwise."

Appellant points out that the testimony of record supports the contention as to there not being what may be called a definite offering price for unique diamonds which may be taken as a freely offered price to all purchasers, because, it is said, transactions in such merchandise are the result of bargaining, the seller frequently asking more than he is willing to take and more than he expects to obtain. This may be true, but we cannot agree that it follows, as a matter of law, that the price actually obtained must be taken as the dutiable value in all instances. That assuredly cannot be held to meet the statutory requirements. [Harry Garbey v. United States, 24 CCPA 48, 51, 52, T. D. 48332.]

 On this record, therefore, we conclude that cost of production value is the proper basis for valuing the aircraft. Appellant contends that $85,000 and not $92,000 is what it cost to produce the aircraft, under section 402a(f), supra. Again, we find little or nothing in the fact that comports with the statutory definition of costs. Mr. Anson recites figures in his affidavit for labor costs, ferrying charges, paint, insulation, and plastic upholstery costs, among others. As we said earlier, appellant below did not brief the issue as to the amount of cost of production value. Here, appellant has not tried to bring together any

of the figures it relies on to establish the value of the aircraft, in the manner required by section 402a(f). "It will be observed that this section [402a(f)] requires, in order to establish cost of production, the proof of four principal items which are numbered (1) to (4), inclusive [supra]." Philipp Wirth et al. v. United States, 23 CCPA 283, 286, T.D. 48144; Mrs. G. P. Snow v. United States, 24 CCPA 319, T.D. 48767. If appellant cannot bring the evidentiary figures within the four subdivisions spelled out in the statute, we do not conceive it our duty, or that the trial judge, to assume that task. The trial court did not err in adjudging the cost of production value of this aircraft at $92,000.

This brings us to the second question. Paragraph 1615, as amended, commonly referred to as the "American goods returned" section of the Tariff Act of 1930, which are free of duty, provides in the part pertinent here, as follows:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * *.

The appraiser found that the assembled aircraft contained American made components, including an American-built fuselage, returned without being advanced in value or improved in condition by any process of manufacture or other means. He valued the American components at a total of $39,487.42. The court below sustained that value.

 Appellant takes aim at what it considers the gross undervaluation of the American-built fuselage included in the valued American components, claiming the true value of the fuselage alone was $38,861. We are of the opinion that the value of the fuselage is not properly severable from the value of all the other American components in the appraisement and that appellant has not made a case for the value of the fuselage or the

value of the other American components, when returned to the United States.

The fuselage was previously bought from an individual in the Panama Canal Zone for $400. (Defendant's exhibit B.) It cost considerably more to have it transported to Costa Rica. It is, concededly, nondutiable. But what is its value under paragraph 1615? The appraisement does not tell us, because the appraiser included the fuselage in the total value returned for all American components. Appellant has raised no point of the suggestion in the letter attached to the official papers not in evidence, that the appraiser "contemplates placing * * a value of $400 on the American fuselage." The letter does not bind the appraiser's subsequent action and is not proof of the appraisement actually returned. What appellant relies on is evidence that the fuselage cost only $400, arguing that is the amount the appraiser must have allowed. Appellant next professes to accept the appraised value of the American components, less $400, to wit, $39,087.42 to establish a severable issue as to the value of the fuselage. The fuselage cannot be thus isolated from the appraisement. It is strictly surmise for the appellant to conclude that the appraiser allowed only $400 for the fuselage. He might have allowed more. He might have allowed less. On the proof of record, we do not know what the appraiser allowed for the fuselage and there is the rub. Cf. Haddad & Sons, Inc. v. United States, 54 Cust. Ct. 600, Reap.Dec. 10942. Since the American components were not appraised item by item, appellant must prove the value of each American component, or accept the appraised total value of all the American components. We know no other way.

We incorporate here by reference the findings and conclusions of the court below.

The decision below is affirmed. Judgment will be so entered.