(Reap. Dec. 10942)

HADDAD & SONS, INC. *v*. UNITED STATES

Entry Nos. 36022 ; 37281.

(Decided April 6, 1965)

*James G. McGoldrick* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster* and *Charles P. Deem*, trial attorneys), for the defendant.

RAO, Judge: The two appeals for reappraisement here involved have been consolidated for purposes of trial. They relate to two importations of Japanese cotton hooked rugs which were invoiced and entered at $0.14 per square foot, plus labels and packing, but appraised at $0.17 per square foot, net, packed.

It is not disputed that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper statutory basis of appraisement. Said provision and the definitions of certain terms therein read as follows:

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*   \*   \*   \*   \*   \*   \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*   \*   \*   \*   \*   \*   \*

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

\*   \*   \*   \*   \*   \*   \*

During the course of the trial, counsel for the Government advised the court that the appraiser's action in returning a value of $0.17 per square foot for the instant merchandise derived from the so-called

MITI [1] check price, effective in Japan at the time of exportation. As will be developed, *infra*, however, it does not appear that cotton hooked rugs of the size here involved, to wit, 19 inches by 29 inches, were subject to the MITI regulations, or included in any price schedules approved by that body.

Seemingly, this case is one which follows the pattern developed in a series of cases, including, but not limited to, the following: *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553; *Albert Mottola, etc.* v. *United States*, 46 CCPA 17, C.A.D. 689; *Dan Brechner et al.* v. *United States*, 36 Cust. Ct. 612, Reap. Dec. 8599, affirmed *United States* v. *Dan Brechner et al., etc.*, 38 Cust. Ct. 719, A.R.D. 71; *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145; *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 428, Reap. Dec. 10830.

Generally speaking, the problem which occupied the attention of this and our appellate court in the cited cases was whether or not certain inland charges, such as inland freight and buying commissions accruing subsequent to the time when the merchandise in issue left the factory or principal markets, were properly included in the ascertainment of the value of the merchandise under consideration.

In the *Haddad* case, *supra*, this member of the court entered upon a rather elaborate discussion of the rules governing this question, as applied in the cited decision, *supra*, and concluded that it must now be regarded as settled law that where it appears that merchandise is freely offered for sale on an ex-factory basis, the site of the factory being the principal market, charges subsequently accruing are not a part of the value of the goods in such market. They become so only if the merchandise is not freely sold or offered for sale at prices which do not include such charges.

Another aspect of the problem discussed in some detail in the *Haddad* case was the quantum of proof necessary to establish the ultimate price at which such or similar merchandise was sold to all purchasers in the usual wholesale quantity and in the ordinary course of trade in the principal market of the country of exportation.

It was further observed that where the appraisement is stated in terms of a first cost or ex-factory price, plus the disputed charges, the appraisement is considered to be separable, and the party challenging the appraiser's return may rely upon the presumption of correctness as to all elements of the appraisement which he does not seek to dispute. Thus, such an appraisement may be attacked simply by negativing the charges without affirmatively establishing that the ex-factory price

---

[1] Although not more fully amplified in the record, counsel was apparently referring to values approved by the Japanese Ministry of International Trade and Industry.

is a price which accords with every element entering into the statutory definition of export value. Where, however, the appraised value is expressed as a single indivisible unit, as in the instant case, it is not susceptible of being broken down into its component parts, except by proof sufficient to sustain the burden imposed by statute upon a party who challenges the presumptively correct return of the appraiser of establishing every material element in the basis of value upon which reliance is placed. *Meadows Wye & Co. (Inc.)* v. *United States*, 17 CCPA 36, T.D. 43324; *United States* v. *T. D. Downing Co.*, 20 CCPA 251, T.D. 46057; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593; *Valley Knitting Co., Inc., et al.* v. *United States, supra.*

It remains to be seen whether the plaintiff in this case has sustained the burden which devolves upon it as a party challenging the presumptively correct appraised value.

The record in the case consists of the testimony of the secretary-treasurer of the plaintiff, Mr. Moysh Haddad, together with affidavits of Yasuo Namekawa, president of The Tosho Co., Ltd., of Tokyo, Japan, verified May 16, 1962, and February 27, 1963 (plaintiff's exhibits 1 and 4, respectively), an affidavit of Takashi Kamitani, the chief managing officer of Kamitani Sangyo KK, of Kosaka, Sakai City, Osaka, Japan, verified January 22, 1963, and two documents described as order confirmations dated, respectively, February 27, 1958, and November 15, 1958 (plaintiff's exhibits 2 and 3, respectively).

It appears from the foregoing and from the official papers, which have been received in evidence, though not marked, that the merchandise in this case was manufactured by Kamitani Sangyo KK and exported by The Tosho Co., Ltd. It was purchased under the circumstances outlined by Mr. Haddad, who stated that he is the Far Eastern buyer for plaintiff corporation; that over the course of the years since 1947, he has made two or three trips to Japan every year; that his practice is to seek out manufacturers of merchandise which he desires to purchase, with the assistance of a representative of Tosho who serves as his buying agent. In the case of cotton hooked rugs, he found that the major production of this item was centered in the environs of Osaka in the district of Sakai, and that he also considered the rugs produced by several other manufacturers in that area.

At the Kamitani factory, he discussed the purchase of cotton hooked rugs with Mrs. Kamitani and a price of the Japanese equivalent of $0.14 per square foot was agreed upon. The actual order was formally placed at Tosho's Osaka office, with a representative of Tosho making a note of the sale in a memorandum book. As expressed by Mr. Haddad, the terms were always ex-factory. All charges involved in taking delivery of and transporting the merchandise to the United States

were to be paid by Tosho with the proceeds of a master letter of credit covering general merchandise opened by Haddad. There were no restrictions on the sale of the merchandise, and the price did not vary with the quantity which he purchased. Other manufacturers and sellers in Sakai also offered similar cotton hooked rugs on an ex-factory basis.

It was the function of The Tosho Co., Ltd., to accept delivery of the finished product, make a proper inspection thereof, take care of packing and all shipping charges, and deduct a fee of 5 per centum of the ex-factory price for its commission.

After the terms of the purchases were agreed upon with Mrs. Kamitani, Tosho issued a confirmation of each order. This document contains a description of the respective items purchased, together with the price, the terms of payment, the destination, date or dates of shipment, and, while it does not mention the name of the manufacturer, contains the following statement:

With thanks, we hereby confirm having this day bought for your account as undermentioned.

The order confirmation is signed by a representative of Tosho and by Mr. Haddad for his company.

Mr. Haddad testified that the size of cotton hooked rugs involved in this case was not one included in the MITI price regulation, and his statement was confirmed by Yasuo Namekawa in plaintiff's exhibit 4, wherein he averred that merchandise such as is here involved was not subject to the MITI "check" price controls under the MITI export permit regulations during the period covered by the instant exportations.

While it is well recognized that one not trained in the law is not competent to testify concerning the scope and effect of foreign statutes and regulations, it is, nevertheless, apparent that one whose operations are subject to the provisions of a law is competent to state what acts he was or was not required to perform in personal compliance with the law. A man who is engaged in the business of exporting merchandise is presumed to know the conditions under which he may lawfully conduct that business. Accordingly, the statement of Mr. Namekawa that he, in fact, exported cotton hooked rugs of the size here under consideration without the necessity of complying with MITI export regulations constitutes a *prima facie* showing that the check price controls imposed by MITI were not applicable to rugs of this size.

If the value returned by the appraiser has been shown to be incorrect, as predicated upon an improper finding of a MITI check price, it was, nevertheless, incumbent upon plaintiff to offer affirma-

tive proof of the value which it claimed. As stated in *I. Arditi* v. *United States*, 50 CCPA 49, C.A.D. 818:

> There is a statutory presumption that the finding of value by the appraiser is correct and the burden here rests on the appellant to prove that the appraised value is erroneous. If successful in this step, he must go further and establish that some other dutiable value is proper. This burden does not shift unless and until the importer shows prima facie such appraisement to be erroneous and establishes a different value in lieu thereof. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502.

In this endeavor, and under the circumstances here obtaining, plaintiff was required to establish all of the necessary elements comprising statutory export value, namely, the price at which such or similar merchandise was freely sold or offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade.

While the record establishes that both Mr. Haddad and Mr. Namekawa conducted extensive purchasing operations in connection with the class of merchandise here involved, their knowledge of market conditions is necessarily limited to the information which they, as buyers, are in a position to obtain, but, obviously, their personal experience could not encompass conditions under which such or similiar merchandise is freely sold or offered for sale. This is information peculiarly within the knowledge of a seller, and must be obtained here if at all from the affidavit of Takashi Kamitani, chief managing officer of Kamitani Sangyo KK (plaintiff's exhibit 5). It is therein stated in part:

> \*    \*    \*    \*    \*    \*    \*
>
> (1)  One of my duties in 1958 and 1959 is to manage the purchases, sales and production of Kamitani Sangyo KK and that I have personal knowledge of the prices and terms of all articles produced and sold at the factory.
>
> (2)  Kamitani Sangyo KK manufactures, quotes and sells 100% cotton hooked rugs, sizes 19″ x 29″ and sells to all buyers wishing to buy for export to the United States at unit invoice prices per square foot for pick-up and delivery at the factory in Osaka and makes no demands or restrictions on the buyers, but full payment on delivery day. No quantity discounts are given to buyers, and buyers must pay all delivery charges.
>
> (3)  Kamitani Sangyo KK did sell 100% cotton hooked rugs, sixe 19″ x 29″, to Mr. Haddad of Messrs. Haddad & Sons, USA, on February 27, 1958 at the price of US $.14 per square foot for delivery of 34,434 square feet in March/April 1958 and this sale was for inspection and pick-up at the factory by the buyer. The Tosho Co., Ltd. of Osaka did make inspection and pick-up at factory for Messrs. Haddad & Sons.
>
> (4)  At all times in February and May 1958, while making delivery of these goods for Messrs. Haddad & Sons, Kamitani Sangyo KK was willing to sell the same cotton rugs to any buyer who will pay the same price in full at time of pick-up at the factory in Osaka.

(5) Kamitani Sangyo KK did sell 100% cotton hooked rugs, size 19″ x 29″ to Mr. Haddad of Haddad & Sons of USA on November 15, 1958 at the price of US $.14 per square foot for delivery of 4,591.2 square feet in February 1959 and at the price of US $.15 per square foot for delivery of 6,886.8 square feet in March 1959, and also the inspection and pick-up was at the factory by the buyer. The Tosho Co., Ltd. of Osaka did also make the inspection and pick-up at factory for Messrs. Haddad & Sons.

(6) At all times between November, 1958 and April, 1959 while making deliveries of this order of Messrs. Haddad & Sons, USA, Kamitani Sangyo KK was willing to sell the same cotton rugs to any buyer who will pay the same price in full at time of pick-up at the factory in Osaka.

(7) Kamitani Sangyo KK in 1958 and 1959 did sell 100% cotton rugs sizes 19″ x 29″ to any other buyers for export to the United States and the sales were made in the usual custom at ex-factory prices for pick-up at the factory by the buyer if full payment was made at date of pick-up.

(8) Kamitani Sangyo KK does not employ The Tosho Co., Ltd. nor does Kamitani Sangyo KK pay commission or other compensation to The Tosho Co., Ltd.

    \*      \*      \*      \*      \*      \*      \*

It is to be noted that the only sales actually referred to in the foregoing are the two sales to the plaintiff at the prices which are stated to have been paid. No evidence of any actual sales to any other purchasers is contained in the affidavit or, indeed, in any other part of the record in this case.

The statement of the affiant to the effect that the company would be willing to sell the same cotton rugs to any other buyer at the same price does not constitute satisfactory proof of sales or offers within the contemplation of the statutory definition of export value. *Trans Atlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 CCPA 19, C.A.D. 118; *Acme Steel Company* v. *United States*, 48 Cust. Ct. 497, Reap. Dec. 10135, affirmed, *United States* v. *Acme Steel Company*, 50 Cust. Ct. 529, A.R.D. 152, affirmed, *Id.* v. *Id.*, 51 CCPA 81, C.A.D. 841.

While the description of the term "freely sold or, in the absence of sales, offered for sale," *supra*, permits the consideration of sales "to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise," it does not appear that plaintiff herein was a selected purchaser within the intendment of this provision. Analysis of the language employed by the legislature to define the statutory expression "freely sold or, in the absence of sales, offered for sale," tends to support the conclusion that a "selected purchaser" is one so particularly designated by the seller; that is, one to whom the seller restricts the sale of merchandise. The mere happenstance that during a particular period in the course of a seller's business transactions, only one purchaser exists for his commodity, does not operate to mark that purchaser as a selected purchaser. *United*

*States* v. *Aceto Chemical Co., Inc.,* 51 Cust. Ct. 507, A.R.D. 159. The record in the instant case does not show a selection of the plaintiff as a designated purchaser. Rather does it purport to establish that such merchandise was freely sold or, in any event, offered for sale to all purchasers seeking cotton hooked rugs of the size in question in the particular market in question. Accordingly, the determination of whether the subject rugs have been freely sold or offered for sale depends upon proof of the price at which such or similar merchandise was sold to all purchasers at wholesale.

On this score, the record made by the plaintiff is woefully inadequate. There is no evidence to show sales to other purchasers and the evidence purporting to show offers for sale is without probative value. The court is, therefore, constrained to hold that the plaintiff has failed to sustain its burden of establishing the price at which such or similar cotton rugs were freely sold or offered for sale to all purchasers at wholesale, and since this necessary element of proof of statutory export value has not been shown, the plaintiff has failed to sustain its burden of proof.

The court, therefore, makes the following findings of fact:

1. The merchandise covered by these consolidated appeals for reappraisement consists of cotton hooked rugs, size 19 inches by 29 inches, exported from Japan on or about March 31, 1958, and February 25, 1959.

2. Said merchandise was appraised at $0.17 per square foot, net, packed, on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. It is the claim of the plaintiff that the proper export value of said merchandise is $0.14 per square foot ex-factory, plus cost of packing and labeling.

4. The record lacks sufficient evidence to show that such or similar merchandise was freely sold or, in the absence of sales, offered for sale to all purchasers at wholesale at the claimed price of $0.14 per square foot, plus packing and labeling.

5. The presumption of correctness of the appraiser's finding of value of the merchandise covered by these appeals for reappraisement has not been overcome.

The court, therefore, concludes:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise covered by these consolidated appeals for reappraisement.

2. That such value was the value returned by the appraiser.

Judgment will be entered accordingly.