**LUCKYTEX, LTD., Appellant,**

v.

**UNITED STATES, Appellee.**

**A.R.D. 257; Reappraisement R63/7032 and 101 others.**

United States Customs Court
Second Division, Appellate Term.
July 30, 1969.

for ocean freight and insurance are included in the appraised values.

Barnes, Richardson & Colburn, New York City, (Norman C. Schwartz, New York City, of counsel), for appellant.

William D. Ruckelshaus, Asst. Atty. Gen. (Herbert P. Larsen, New York City, Trial Atty.), for appellee.

Before FORD, NEWMAN and OLIVER, Judges.

NEWMAN, Judge:

This is an application for review by plaintiff below of a decision and judgment of Hon. David J. Wilson, the trial judge, covering 102 consolidated appeals for reappraisement in Luckytex, Ltd. v. United States, 60 Cust.Ct. 826, R.D. 11511 (1968), holding that the appraised values were the proper dutiable export values of various items of cotton wearing apparel.

The merchandise was exported by Asia Industrial Development Co., Ltd., Hong Kong, during the period between December 1960 and October 1962, and was entered at the ports of Baltimore and New York. Entry was made by the importer in each appeal at the invoiced unit c. i. f. prices, less the included and separately stated total charges for ocean freight and marine insurance premium. Appraisements are designated on the official papers in two ways: In most of the appeals, the appraised values are shown to be at the invoiced unit prices, net packed; and in the others the appraiser indicated specific unit values, net packed, which are equal to the invoiced c. i. f. prices. There is no indication in the official papers that the invoiced charges

Both parties agree that export value, as defined in section 402(b) of the Tariff Act of 1930, and as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165,[1] is the proper basis for appraisement. The parties also agree that this case is a retrial of Luckytex, Ltd. v. United States, 56 Cust.Ct. 575, R.D. 11119 (1965), wherein Chief Judge Rao sustained the appraised values of certain wearing apparel exported by Asia Industrial Development Co., Ltd., on October 11, 1961, which date is within the period of exportation involved herein. The record of the prior case was incorporated into the record of the present trial on appellant's motion, without objection by appellee (R. 31).

Appellant's principal argument is that it has now made a *prima facie* case, establishing as the correct dutiable export values certain f. o. b. prices at which the merchandise was freely offered for sale to Luckytex and others, and that the deficiencies in proof noted by the court in the prior case have been overcome. Additionally, as in the earlier case, appellant argues that the merchandise was appraised at the invoiced c. i. f. prices, net, and that the appraiser erroneously failed to make allowance for the invoiced charges for ocean freight and marine insurance premium. In support of the latter contention, appellant relies upon John A. Steer & Co. v. United States, 30 Cust.Ct. 504, R.D. 8196 (1953); The Heyman Co., Inc. v. United States, 39 Cust.Ct. 707, R.D. 9033 (1957), *aff'd*, United States v. The Heyman Co., Inc., 43 Cust.Ct. 619, A.R.D.

1. Section 402(b) of the Tariff Act of 1930, as thus amended reads:

 (b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade; for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

113 (1959), *aff'd on other grounds*, United States v. The Heyman Co., 48 CCPA 13, C.A.D. 755 (1960).

In brief, the issue to be determined is whether, on the record as now made, appellant has established *prima facie* that the appraised values are erroneous, and that its claimed f. o. b. prices represent the correct dutiable export values of the imported wearing apparel.

We have concluded that appellant has not sustained its dual burden of proof, and we affirm the judgment below.

 Appellant's contention that the appraiser should have determined the export values of the merchandise by deducting the invoiced charges for ocean freight and insurance from the c. i. f. prices was considered and rejected in the prior *Luckytex* case. Noting in the earlier case, that the appraiser had found a price per dozen of each imported style equal to the c. i. f. prices shown on the invoice, which prices were stated to include charges for ocean freight and insurance, the court held that there was nothing to show that the values adopted by the appraiser embraced any or all of the charges listed, or if they did, whether such charges were included in the same amounts as those specified on the invoices. The same situation exists in the present case. Hence, the prior holding is completely applicable herein, as found by the trial judge.

Moreover, in the prior case, the court pointed out that the deductions of varying amounts for actual ocean freight and marine insurance from uniform c. i. f. prices to Luckytex could result in differing net values for the same merchandise exported at or about the same time. The court, therefore, determined that it could not predicate dutiable export value upon the c. i. f. prices to Luckytex, less the actual ocean freight and insurance as invoiced. Accepting the foregoing "differing net value" theory, appellant argues that there is thus a resultant constructive "absence of sales," and resort may properly be had to *offers* pursuant to the rationale of Aceto Chemical Co., Inc. v. United States, 51 CCPA 121, C.A.D. 846 (1964).

In *Aceto Chemical*, the prices shown by actual sales were disregarded as they were not the prices at which the involved merchandise was freely sold to all purchasers at wholesale under the statutory definition of American selling price. Citing United States v. Mexican Products Co., 28 CCPA 80, C.A.D. 129 (1940), the appellate court held that the list price was the only price at which the goods were freely offered to all purchasers in the ordinary course of trade, and that the offering price, in the absence of a statutory American selling price based on actual sales, could meet the requirements of the statute.

Following the principle of *Aceto Chemical*, appellant argues that the export values of the merchandise should be determined on the basis of the f. o. b. prices as testified at this trial by its witness Charles T. Y. Pan of Hong Kong, who had also testified in the prior case by means of affidavit.

In the present case, Mr. Pan testified that in 1960, 1961 and 1962 he was associated with the shipper herein, Asia Industrial Development Company, as manager of the garment department; that among his other duties, he was responsible for the sales of merchandise, and was familiar with the details of sales made during that period; and that at the time of trial, he was employed by Textile Alliance, Ltd., Hong Kong.[2]

Mr. Pan further testified that in arriving at the prices which he quoted to his customers, he did not work from printed price lists, but rather on each article he computed the cost, including overhead and profit, which constituted the f. o. b. price; that to the f .o. b. price he added estimated costs of insurance and freight, which constituted the c. i. f. price; that he had reviewed his business records to refresh his recollection re-

---

2. The exporter was merged into Textile Alliance, Ltd., Hong Kong, on or about July 1, 1962 (R. 81).

garding the prices of the garments involved and he had made notations from such records.

During his testimony, the witness had his records and notations from which he testified as to the prices allegedly offered. He stated that there was a c. i. f. and f. o. b. price put on each item, and that the arithmetical differences between the two prices were estimates for ocean freight and insurance; and that once he had established the price of a garment to Luckytex, such price was offered to all purchasers who cared to buy that garment, either c. i. f. or f. o. b.

With respect to the f. o. b. prices quoted by Pan, the trial judge was not inclined to give such testimony much credence. Indeed, the trial court noted the absence of documentary or oral evidence concerning the method or means by which the exporter had made the alleged offers at f. o. b. prices, or to whom such offers were made. The record shows that Mr. Pan testified on cross-examination that quotations to firms other than Luckytex had been made in writing, but he did not have copies of those quotations in his possession (R. 62–63). On redirect examination, when asked if he had retained such copies in Hong Kong, Pan stated that he would have to "check up at our office," but that correspondence was ordinarily destroyed after three years, and he "probably" would not have access to any written quotations made in 1961 and 1962 (R. 72).

Moreover, notwithstanding Mr. Pan's statement that he had obtained his f. o. b. price quotations from his regular business records (from which he had allegedly made his notations) (R. 14–15), no such records were introduced in evidence, nor even identified. Considerable doubt is further cast upon the witness' testimony relative to f. o. b. offers of such or similar merchandise to purchasers other than Luckytex by his admission that *other* United States purchasers were interested in better quality and better made garments (R. 72).

The trial judge noted, too, that in the incorporated case, only "left-over merchandise" and "odd lots" in broken styles and colors were sold to United States customers at f. o. b. Hong Kong prices, which were not considered by Pan to be sales in the usual course of the exporter's business.

In view of the foregoing, we find no error in the lack of credence attached by the trial judge to the witness' testimony regarding the asserted f. o. b. offers.

In any event, we have concluded that appellant has failed to show that the principle of *Aceto Chemical* is applicable in this case, since the record fails to show an "absence of sales" which would permit proof of the prices at which the merchandise was freely offered in determining export value.

In our opinion, the trial court correctly held that if there were actual sales of such or similar merchandise for exportation to the United States by Hong Kong manufacturers other than Asia Industrial Development Co., Ltd., it would be proper to consider them before considering the alleged free offers by the exporter herein. F. B. Vandegrift & Co., Inc. v. United States, 60 Cust.Ct. 965, A.R.D. 239 (1968), *aff'd* 410 F.2d 1259, 56 CCPA, C.A.D. 962 (1969). Haddad & Sons, Inc. v. United States, 56 Cust.Ct. 792, A.R.D. 205 (1966), citing W. J. Byrnes & Company v. United States, 50 Cust.Ct. 406, R.D. 10451 (1963).

Appellant emphasizes, in its brief, that counsel for the Government conceded at the trial that the appraisement was based upon the f. o. b. prices of such merchandise. However, appellant apparently overlooks that under section 402(f) (4) (B) "such" merchandise may include "[m]erchandise which is identical in physical characteristics with, and was produced by *another person* in the same country as, the merchandise undergoing appraisement." [Emphasis added.] Moreover, an appraisement based upon sales of "such" merchandise does not

negate the existence also of sales of "similar" merchandise by firms in Hong Kong other than the exporter herein.

 Although pursuant to section 402(f) (4), sales of "such" merchandise are to be given prior consideration over sales of "similar" merchandise in determining export value, under section 402 (b) *sales* of such or similar merchandise are expressly given priority over *offers* of such or similar merchandise. Clearly, then, in accordance with the statute, there should have been an affirmative showing by appellant of the requisite "absence of sales" by other Hong Kong manufacturers of both such and similar merchandise if it wished to prove export value on the basis of offers.

 Although there was no evidence presented by appellee which affirmatively established the correctness of the appraised values, the burden in that respect never shifted to it, since appellant failed to establish *prima facie* that the appraised values were erroneous and that its claimed values were correct. I. Arditi v. United States, 50 CCPA 49, C.A.D. 818 (1963).

This court, therefore, makes the following findings of fact:

1. The imported merchandise consists of numerous items of cotton wearing apparel, which was exported from Hong Kong by Asia Industrial Development Co., Ltd., between December 20, 1960 and October 16, 1962.

2. The merchandise was entered at the ports of Baltimore and New York at the invoiced c. i. f. prices, less the included separately stated total charges for ocean freight and marine insurance premium.

3. The merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced unit price, net packed, for each invoiced item.

4. There is no evidence of record that the appraiser included charges for ocean freight or insurance in the appraised values, or that he appraised at c. i. f. prices.

5. There is no substantial evidence to show that the merchandise was freely sold or, in the absence of sales, offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade, at prices other than those returned by the appraiser.

This court concludes as matters of law:

1. The statutory presumption of correctness attaching to the appraised values has not been overcome by appellant's evidence.

2. Export value, as defined in section 402(b), as amended, is the proper basis for appraisement.

3. The proper dutiable export values are the values determined by the appraiser.

4. The judgment of the trial court is affirmed.

Judgment will be entered accordingly.