(R.D. 11774)

J. WESTHEIMER & CO. *v.* UNITED STATES

Entry Nos. 24625, etc.

(Decided October 31, 1972)

*Baker & McKenzie* (*William D. Outman II* of counsel) for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

MALETZ, Judge: This case involves 114 appeals for reappraisement which were consolidated for trial. The appeals cover a broad range of musical instruments that were manufactured and exported from Japan during a period from January 1965 through February 1967. The instruments were entered at the port of Chicago and appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.[1] The

---

[1] Section 402(b), as thus amended, reads:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country

values found were equal to the unit values as indicated in red ink on the invoices.

The parties are in agreement that the correct basis of appraisement is export value and that the imported merchandise does not appear on the Final List, T.D. 54521. The controversy stems from the fact that plaintiff claims that all the appraisements are separable and that the proper dutiable values are represented by the ex-factory prices as shown on the invoices.

Defendant, on the other hand, maintains that the appraisements in the consolidated cases are not separable except for the appraisements in six specified appeals (which will be considered later) and that the appraised values are the proper dutiable values.

Against this background, the issues are (1) whether the appraisements involved here are separable; and (2) whether plaintiff has proved that its claimed export values are the correct dutiable values.

## The Record

The record consists of the oral testimony of two witnesses called by plaintiff. No witnesses were called by defendant. Plaintiff's first witness was Jack L. Westheimer, president of Westheimer Importing & Mfg. Co., Inc., the successor to the partnership of J. Westheimer & Co.[2] He testified that he has been employed by the Westheimer corporation since its inception in 1964; that Westheimer has been engaged in the importation and sale in the United States of 143 different types of musical instruments and that such instruments were purchased by his firm almost exclusively from Japan, utilizing the services of Nanyo Boeki Co., Ltd. (hereafter "Nanyo") to assist in these purchases.

The witness further testified that generally he met with the Japanese manufacturers annually during the music convention in Chicago where he negotiated prices, delivery and other matters concerning the instruments, and that on occasion Nanyo assisted in negotiating a price. Orders were generally placed with the manufacturers on a six-month to one-year basis, but these orders were frequently increased during the year. In the event Westheimer desired to purchase instruments not covered by the orders placed in Chicago, it sent purchase orders to Nanyo which obtained confirmations and delivery dates from the manufacturers and advised Westheimer accordingly. In addition, Nanyo inspected the imported merchandise at the factory for defects,

of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

[2] J. Westheimer & Co. and its successor, Westheimer Importing & Mfg. Co., Inc., will hereafter be referred to as "Westheimer".

expedited shipments, and checked on delayed delivery. Payments were made by issuance of a letter of credit to Nanyo which was considered by Westheimer to be its buying agent.

The witness stated that although Westheimer and Nanyo began doing business together in 1959, they had no written agreement until 1967. He added that it is customary for Westheimer to do business without written contracts in which connection he pointed out that Westheimer has no written contracts with its customers or employees.

Plaintiff's second witness was Ken Saito, the manager of Nanyo. Saito, who has been associated with that company for some 16 years, testified to the following effect: Nanyo has been engaged in the business of taking orders from customers and placing them with factories in Japan. More specifically, during the period from 1964 through 1967, it worked with some 10 or 11 importing companies in the United States, including Westheimer. An unspecified number of these companies did not handle musical instruments but rather imported sporting goods such as baseball gloves and fishing reels. For the companies with which it worked, Nanyo performed the function of placing orders on their behalf, and then following through on the inspection, documentation and shipment of the merchandise. For example, Nanyo would submit a product at a certain price to Westheimer; if the latter wished to buy the item, it would advise Nanyo, which in turn would confirm the price and delivery to Westheimer. When the merchandise was ready, Nanyo would send an employee to the factory to conduct an inspection. If the merchandise passed inspection, the factory would then deliver it to an independently owned port warehouse where Nanyo would take possession.

Nanyo had no right to set prices, and Saito testified that he did not know what factors went into making up the manufacturer's prices. The payment to the factory was made after shipment when Nanyo withdrew funds against a general letter of credit issued by Westheimer to its order. The price paid to the manufacturer for the merchandise included inland freight from the factory to the port warehouse and, therefore, according to Saito, was not a true ex-factory price. The commercial invoices were made up by Nanyo after the merchandise was received at the port warehouse and prior to or at the same time it was transshipped from the warehouse. However, the charges for inland freight and the f.o.b. charges were not determined until after the actual shipment and, therefore, those charges as they appeared on the commercial invoices were made up of "guesses", based on Nanyo's experience as to what they should be. Other charges that appeared on the invoices prepared by Nanyo were explained by Saito as follows: "Buying commission" charges were the 5 percent commis-

sion received by Nanyo for services performed on Westheimer's behalf; "storage" charges were for storage at the port warehouse where the merchandise was delivered by the factory; "hauling and lighterage" charges were for moving the merchandise from the port warehouse to the ship; "domestic insurance" charges were for insuring the merchandise from the factory to the ship; and "petties" were for miscellaneous expenses.

Finally, the witness Saito testified that Nanyo had no financial interest in any Japanese factory; had never placed an order with a manufacturer until it had an order from the United States purchaser; and did not have any said arrangements or rebate contracts with any Japanese suppliers.

## Separability of Appraisements

In determining whether plaintiff is entitled to judgment sustaining the claimed values for the imported merchandise, the threshold question is whether the appraisements made here on the basis of export value are separable. On this aspect, plaintiff contends that all the appraisements are separable and hence that the charges listed on the invoices for "buying commissions", "storage", "hauling and lighterage", "domestic insurance", and "petties" form no part of the export value of the merchandise in issue. Defendant, to the contrary, contends that in the great majority of the 114 consolidated appeals the appraisements have not been shown to be separable.

It is of course basic that an appraisement is separable where it has been clearly established that an amount representing a particular item of expense in dispute has been included in the appraised value being challenged. Thus, if the appraising official has expressed his appraisement as the ex-factory invoice unit price, plus the amount for inland charges which he marked with an "X" on the invoice, such an appraisement is separable. See e.g., *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914 (1967). And where there is clear proof by testimony or by clear indication on the invoices through red ink marks or checks that the appraising official adopted the disputed charges and included those charges in his appraisement, such an appraisement is likewise separable. See e.g., *United States* v. *Shalom & Co.*, 57 Cust. Ct. 767, A.R.D. 216 (1966). It is to be added that in the event the separability doctrine is applicable to a particular appraisement, the party contesting the appraisement need only challenge the disputed items and rely on the presumption of correctness which attaches to the amounts which are not in dispute. E.g., *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371 (1947).

If, on the other hand, the appraisement has been expressed as a *per se* unit value, and there is nothing of record which clearly indicates that the appraising official adopted and included in the appraised value the amounts claimed to be in dispute, separability is not applicable, and the party challenging the appraisement must satisfy each and every element of proof required to establish that its claimed value meets the statutory requirements. *Vicki Enterprises, Inc., et al.* v. *United States*, 67 Cust. Ct. 480, R.D. 11750 (1971), *aff'd* 68 Cust. Ct. 324, A.R.D. 302 (1972) (appeal pending); *Brentwood Originals (Fritz)* v. *United States*, 60 Cust. Ct. 853, R.D. 11518 (1968); *Luckytex, Ltd.* v. *United States*, 60 Cust. Ct. 826, R.D. 11511 (1968), *aff'd* 63 Cust. Ct. 659, A.R.D. 257, 302 F. Supp. 1326 (1969); *Haddad & Sons, Inc.* v. *United States*, 54 Cust. Ct. 600, R.D. 10942 (1965), *aff'd* 56 Cust. Ct. 792, A.R.D. 205 (1966).

With these considerations in mind, there are six appeals in which the appraisements have been expressed as the unit invoice prices plus the charges marked "X" (which charges include buying commissions and various inland charges such as charges for storage, hauling and lighterage, domestic insurance, inspection fees and petties). Falling into this category is the appraisement in R67/14778. Also, in R67/14758, R67/16621, R67/16629 and R67/16635, there appear on the invoices appraisements of merchandise identified with the letter "A" and others identified with the letter "B", both written in red ink. The appraisements designated with the letter "A" are expressed as the invoice unit values plus the items marked "X", packed, whereas the appraisements marked "B" have been appraised at unitary unit values. A further appeal, R67/16625, covers several different kinds of musical instruments, including electrical amplifiers. The amplifiers were appraised at the invoice unit values plus items marked "X" whereas the invoice shows that the remaining merchandise was appraised at *per se* unit values approximately equal to the various invoice values. In short, the appraisement in R67/14778, the appraisements marked "A" in R67/14758, R67/16621, R67/16629 and R67/16635, and the appraisement of merchandise identified as amplifiers in R67/16625 are separable—and defendant so concedes. But notwithstanding separability of these appraisements, the question still remains as to whether plaintiff has proven that its claimed values are correct. This question will be considered in a later part of this opinion.

With respect to the remaining appeals and the appeals discussed in the preceding paragraph where the appraisements were expressed as *per se* values, it must be concluded, for the reasons that follow, that the appraisements therein are not separable.

As to these appeals, plaintiff contends that statements in the official papers, particularly on Customs Form 5555 ("Notice of Action –

Increase in Duties"), show that the appraisements to which they refer are separable.[3] However, in the circumstances presented here, reliance on these forms to establish separability is misplaced. For example, accompanying the papers in R67/14784 is Customs Form 5555, dated September 30, 1965, wherein it is noted that an appraisement is *"proposed * * * at invoiced unit values plus 9% (buying commission and shipping charges), net, packed."* [Emphasis added.] However, this document is not an indication of how the appraisement was made, but merely a proposed action. In fact, the merchandise was not appraised until April 10, 1967, some one year and seven months after the Customs Form 5555, and the appraisement as expressed on the invoice was made at *per se* invoice unit values and appeared on the invoice in red ink as single numerical values. There are no notations on the invoice to show that the appraising official adopted and included in the actual appraisement amounts listed on the invoice as buying commission and shipping charges; and there is no other evidence of any kind that he did this. It is the actual appraisement that must be considered in order to determine what was done, and not a document which is merely a proposed action in the absence of proof that the proposed action was adopted as the final action upon appraisement.

R67/14766 contains a Customs Form 5555 which lists 73 entries by individual entry number and states that these entries were "appraised at F.O.B. unit values. See invoices for details."[4] In addition, each of the appeals in R67/13368, R67/14729, R67/14751 and R67/14778 contains a Customs Form 5555 which similarly states that the respective merchandise thereunder was "appraised at F.O.B. unit values" and refers to the invoice for details.[5]

Against this background, plaintiff argues that the language on the Customs Form 5555, "[s]ee invoices for details", refers to the buying commission and the other charges listed on the invoices, and that

---

[3] While the official files in only a relatively few appeals contain a Customs Form 5555, the files in most of the appeals contain "Summary of Examination and Appraisement" sheets which make cross-reference to Form 5555 on the "Summary of Examination and Appraisement" sheets.

[4] The entries which are listed on this Customs Form 5555 cover the following 74 appeals:

| | | | | |
|---|---|---|---|---|
| R67/13358 | R67/14737 | R67/14753 | R67/14770 | R67/15596 |
| R67/13360 | R67/14738 | R67/14754 | R67/14772 | R67/15597 |
| R67/13363 | R67/14739 | R67/14755 | R67/14773 | R67/15598 |
| R67/13364 | R67/14740 | R67/14756 | R67/14775 | R67/15599 |
| R67/13365 | R67/14741 | R67/14757 | R67/14776 | R67/15600 |
| R67/13366 | R67/14742 | R67/14758 | R67/14777 | R67/15601 |
| R67/14727 | R67/14743 | R67/14759 | R67/14779 | R67/15602 |
| R67/14728 | R67/14744 | R67/14760 | R67/14781 | R67/15603 |
| R67/14730 | R67/14745 | R67/14761 | R67/14782 | R67/15604 |
| R67/14731 | R67/14746 | R67/14763 | R67/14784 | R67/15605 |
| R67/14732 | R67/14747 | R67/14764 | R67/14785 | R67/15606 |
| R67/14733 | R67/14748 | R67/14765 | R67/14786 | R67/15607 |
| R67/14734 | R67/14749 | R67/14766 | R67/14787 | R67/15611 |
| R67/14735 | R67/14750 | R67/14767 | R67/15594 | R67/15612 |
| R67/14736 | R67/14752 | R67/14769 | R67/15595 | |

[5] The Customs Form 5555 contained in R67/13368 also referred to R67/13361, R67/13362, R67/13369 and R67/18606.

this language is sufficient to establish "the requisite separation of the ex-factory prices claimed by plaintiff and the disputed charges added to such prices by the appraiser." In this connection, plaintiff relies upon *United States* v. *Knit Wits (Wiley) et al.*, 62 Cust. Ct. 1008, A.R.D. 251, 296 F. Supp. 949 (1969), where the court did place some evidentiary weight on two Customs Forms 5555. However, the forms involved in that case contained language stating that the " '[b]uying [c]ommission' [was] considered part of appraised value." 62 Cust. Ct. at 1009. Further, the appraisements in *Knit Wits* were made in such a manner as to clearly establish that a 5 percent commission was added to a unit price. Thus, on *all* of the evidence before it, the court in *Knit Wits* found that the appraisements were separable and that the amounts representing the "buying commissions" were not part of dutiable value.

It is true that in the present case, the invoices list prices which are labeled "ex-factory" or "unit" prices, as well as separate totals for buying commission and other inland charges. However, there is nothing to indicate that the appraiser adopted any of these amounts in rendering his appraisements. Certainly the Customs Forms 5555 which merely refer to the "invoices for details" do not show which of these amounts, if any, were considered as elements of the appraised values. What is more, we see no merit to plaintiff's argument that the language on the Customs Forms 5555, "[s]ee invoices for details", refers to the ex-factory prices, buying commission, and other charges listed on the commercial invoices. On the contrary, we think it plain that this language refers to the red notations on the invoices which express *per se* values arrived at by the appraising official, and not to the ex-factory prices, buying commission and other charges placed thereon by the exporter. This is emphasized by the fact that without exception the appraising officer indicated on the invoices that the entries were "[a]ppraised at unit values as checked or as noted in red, net packed." In short, the appraisements in this group of appeals are not separable for in order to have a separable appraisement—

> A separate unit price for appraised merchandise must be shown, and the item in dispute must be one clearly identifiable as having been considered by the appraiser and as affecting dutiable value. * * * [*United States* v. *Knit Wits (Wiley) et al.*, *supra*, 62 Cust. Ct. at 1010.]

Finally, there is a group of appeals which are not covered by any of the Customs Forms 5555 referred to by plaintiff.[6] The appraise-

---

[6] The following appeals are not covered by a Customs Form 5555:

| | | | | |
|---|---|---|---|---|
| R67/13356 | R67/14771 | R67/16623 | R67/16631 | R67/16638 |
| R67/13357 | R67/14774 | R67/16624 | R67/16632 | R67/16639 |
| R67/13359 | R67/14780 | R67/16626 | R67/16633 | R67/16640 |
| R67/13367 | R67/14783 | R67/16627 | R67/16634 | R67/18143 |
| R67/14762 | R67/16620 | R67/16628 | R67/16636 | |
| R67/14768 | R67/16622 | R67/16630 | R67/16637 | |

ments in these cases were made at unitary *per se* values, and there is no indication that the appraiser adopted the buying commissions or any other charges in dispute. The appraisements, therefore, are not separable on their face nor does plaintiff offer any argument or proof to support its contention that they are.

Thus, except for the six appeals where the appraisements are concededly separable, plaintiff has failed to show that separability is applicable. And absent separability, it was plaintiff's evidentiary burden to establish every element in the statutory definition of export value. This plaintiff has not even attempted to do; therefore, in those appeals where the appraisements are not separable, the appraised values must remain undisturbed. See e.g., *Concord Electronics Corp.* v. *United States*, 69 Cust. Ct. 241, A.R.D. 304, 345 F. Supp. 1000 (1972) (appeal pending).

## The Separable Appraisements

With respect to the separable appraisements, the appraising official (as noted previously) took the invoice "ex-factory" price—which, save for the 11 appeals listed below, the evidence has established is not in fact a true ex-factory price (see Tr. 70) [7] but rather an ex-warehouse or ex-godown price [8]—and added thereto certain charges marked "X" which represented amounts for buying commission and other inland charges for storage at the warehouse, hauling and lighterage, and petties. Plaintiff contends that in view of the fact that these appraisements are separable, the charges marked "X" are non-dutiable.

But even though the appraisals are separable, it was still incumbent upon plaintiff to show that merchandise such as or similar to that in issue here was freely sold or offered for sale to all purchasers on an ex-warehouse basis. As our appellate court stated in *United States* v. *Pan American Import Corp.*, 57 CCPA 134, 138, C.A.D. 993 (1970):

> * * * the doctrine of severability has no relation to the first "hurdle" that the importer must clear, *i.e.*, to establish that such or similar merchandise was in fact offered to all purchasers on an ex-factory [or ex-warehouse] basis. Once this "hurdle" has been passed, the severability rule makes it unnecessary for the importer

---

[7] In these 11 appeals, *i.e.*, R67/13356, R67/13357, R67/13359, R67/13367, R67/14729, R67/14751, R67/14762, R67/14771, R67/14774, R67/14780 and R67/14783, the inland freight charges are not included in the invoice unit prices but are separately listed with the buying commission and other inland charges. In these circumstances, the invoice unit prices in these appeals would seem to be ex-factory rather than ex-warehouse prices. However, it is to be noted that the merchandise covered by these appeals was not purchased through Nanyo but through the Dorna Trading Co. and MG Company. Considering that Nanyo was not involved with these transactions, the testimony of both Saito and Westheimer has no relevance to these appeals.

[8] An ex-godown price is sometimes defined as an ex-factory price plus inland freight to the warehouse. See *B & W Wholesale Co.* v. *United States*, 58 CCPA 92, 97, n. 2, C.A.D. 1010 (1971).

to go further and show what the actual ex-factory [or ex-warehouse] prices so offered were, as the ex-factory [or ex-warehouse] price he has paid then (and only then) is conclusively presumed to meet the requirements of export value.

A more recent statement of this principle appeals in *Karl Schroff & Associates, Inc.* v. *United States*, 66 Cust. Ct. 621, 623–24, A.R.D. 286, 326 F. Supp. 967, 970 (1971) :

> Under the decided cases where the ex-warehouse or factory prices and other charges are stated separately on the invoices and the appraiser's finding is expressed in terms of such ex-warehouse or factory prices plus additional charges, the appraisement is deemed separable. *United States* v. *Fritzsche Bros. Inc.*, 35 CCPA 60, C.A.D. 371 (1947) ; *United States* v. *Supreme Merchandise Co.*, 48 Cust. Ct. 714, A.R.D. 145 (1962) ; *Haddad & Sons, Inc.* v. *United States*, 54 Cust. Ct. 600, 602–3 Reap. Dec. 10942 (1965), aff'd 56 Cust. Ct. 792, A.R.D. 205 (1966).

> If the appraisement is separable, as we think it is here, then the unchallenged portion of an appraisement i.e. the ex-warehouse or factory invoice prices, are presumed to be correct and the only essential elements of proof are the effect and amount of the disputed charges, *provided* the merchandise involved was freely sold or offered for sale to all purchasers upon an ex-warehouse or factory basis. *Hub Floral Manufacturing Company* v. *United States*, 62 Cust. Ct. 979, A.R.D. 249, 296 F. Supp. 355 (1969), aff'd *United States* v. *Hub Floral Manufacturing Company*, 57 CCPA 134, 137, C.A.D. 993 (1970) ; *United States* v. *Pan American Import Corp.*, 57 CCPA 134, 138, C.A.D. 993 (1970) ; *United States* v. *Chadwick-Miller Importers, Inc.*, 54 CCPA 93, C.A.D. 914 (1967). Since we find the appraisements here to be separable the essential proof is limited to whether the imports involved were freely sold or offered for sale to all purchasers upon an ex-warehouse or factory basis, and, if so, were the additions of the inland charges permissible.[9]

With further respect to *Schroff*, the appellate term of this court found that based on the evidence presented a "climate" of sales had been established which led to the reasonable inference that the merchandise was freely sold or offered for sale to all purchasers on an ex-warehouse basis. There the record indicated that the importer had successfully negotiated with seven manufacturers in the same line, on the same basis, within a period of a year. Furthermore, the buying agent's affidavit indicated that the ex-warehouse basis of doing business was utilized by various other United States purchasers he represented. Evidence was also presented showing that nine specific manufacturers and other manufacturers offered similar merchandise to all purchasers on an ex-warehouse basis. The importer also testified that he was able to negotiate contracts on this basis with all manufacturers he con-

---

[9] See also *B & W Wholesale Co.* v. *United States*, *supra*, 58 CCPA 92 ; *United States* v. *Bud Berman Sportswear, Inc.*, 66 Cust. Ct. 628, A.R.D. 287 (1971).

tacted. Finally, the court in *Schroff* noted that the government had made one appraisement of similar merchandise at the invoiced unit value exclusive of the additional charges shown on the invoice, thus relying on the ex-warehouse price to establish the value for that shipment. See also *Hub Floral Manufacturing Company* v. *United States*, 62 Cust. Ct. 979, A.R.D. 249, 296 F. Supp. 355 (1969), *aff'd United States* v. *Hub Floral Manufacturing Company*, 57 CCPA 134, 139, C.A.D. 993 (1970); *United States* v. *Chadwick-Miller Importers, Inc.*, 54 CCPA 93, C.A.D. 914 (1967); *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132 (1961).

By contrast with the situation in *Schroff*, the record in the present case fails to establish a climate from which it could reasonably be inferred that merchandise such as or similar to the imported merchandise was freely sold or offered for sale to all purchasers on an ex-warehouse basis. The pertinent evidence on this phase of the case indicates that Westheimer dealt with several manufacturers of musical instruments from whom it purchased—with the assistance of Nanyo—over 143 different types of musical instruments. Saito, the manager of Nanyo, testified that his firm represented 10 or 11 United States importers, including Westheimer. However, there is no indication in the record as to how many of these importers dealt in musical instruments as opposed to sporting goods, such as baseball gloves and fishing reels. Indeed, for all that appears in the record, it could well be that Westheimer was the only musical instrument importer represented by Nanyo. Furthermore, there is no testimony whatever regarding commercial transactions with these other importers. Nor is there any evidence in the record that the other importers represented by Nanyo bought or could buy merchandise such as or similar to the imported merchandise on the same basis as Westheimer, i.e., on an ex-warehouse basis. In short, there is no indication in the record that merchandise such as or similar to the merchandise in issue was freely sold or offered for sale to all purchasers on an ex-warehouse basis. Finally, in the present case there is no evidence—as there was in *Schroff*—that the government had ever considered the inland charges involving similar merchandise to be non-dutiable.

Thus, with regard to the separable appraisements, plaintiff has failed to establish that merchandise such as or similar to the imported merchandise was freely sold or offered to all purchasers on an ex-warehouse basis and has, therefore, failed to clear the "first hurdle" in its burden of proof. *United States* v. *Pan American Import Corp.*, *supra*, 57 CCPA at 138.[10]

---

[10] Even assuming that the appraisements in the other appeals are separable, as argued by plaintiff, plaintiff still would not prevail in such appeals since it has not met the foregoing element of proof as set down in *Pan American*.

## Conclusions

In view of all the foregoing, it is found (1) that with respect to the non-separable appraisements, plaintiff has failed to establish the elements in the statutory definition of export value; and (2) that with respect to the separable appraisements, plaintiff has failed to establish that merchandise such as or similar to the imported merchandise was freely sold or offered for sale to all purchasers on an ex-warehouse basis. The appeals, therefore, are dismissed and the appraised values affirmed. Judgment will be entered accordingly.